```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ANTONIO ARENA

                        Plaintiff,              07-CV-6218CJS

             v.                                 DECISION
                                                and ORDER
MICHAEL ASTRUE,
Commissioner of Social Security

                        Defendant.
_____
```

## INTRODUCTION

Plaintiff, Antonio Arena ("Plaintiff"), brings this action pursuant to Title XVI of the Social Security Act, seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income("SSI"). The Plaintiff specifically alleges that the decision of the Administrative Law Judge, Judith Showalter ("ALJ"), denying Plaintiff's application for benefits, was not supported by substantial evidence in the record and was contrary to the applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c) ("Rule 12 (c)"), on the grounds that the decision of the ALJ was supported by substantial evidence in the record. Despite timely notification, the Plaintiff has not responded to the Commissioner's motion for judgment on the pleadings. After reviewing the entire record, this court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable

legal standards. Therefore, for the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's complaint is dismissed.

## BACKGROUND

On October 31, 2003, Plaintiff filed an application for Supplemental Security Income under Title XVI of the Social Security Act, claiming disability due to depression, high blood pressure, fibromyalgia, and chronic pain. (Transcript of the Administrative Proceedings at pages 426-428, 433) (hereinafter "Tr."). The Plaintiff's application was initially denied on March 10, 2004. (Tr. at 430). Plaintiff filed a timely written request for a hearing which was held, by video conference, on July 12, 2006 before ALJ Judith Showalter. (Tr. at 444-487). Plaintiff appeared at the video hearing, with a representative, and testified. (Tr. at 444-487).

In a decision dated September 26, 2006, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act.[1] (Tr. at 11-21). The ALJ's decision became the final decision of the Commissioner on February 28, 2007 when the Appeals Council denied further review. (Tr. at 4). The Plaintiff then filed this action on May 1, 2007.

---

[1] The ALJ noted that the Plaintiff had previously been denied Social Security Disability benefits. (Tr. at 11). The Plaintiff was most recently denied after an administrative hearing, in an opinion by ALJ Nancy Lee Gregg, dated August 26, 2003. Id. As the Plaintiff did not appeal that decision, the ALJ, in this case, considered the finding that the Plaintiff was not under a disability, up to and including August 26, 2003, *res judicata*. Id.

**DISCUSSION**

I. **Jurisdiction and Scope of Review**

42 U.S.C. §405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering these cases, this section directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to whether or not the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding a reviewing Court does not try a benefits case *de novo*). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards, and moves for judgment on the pleadings pursuant to Rule 12 (c). The Plaintiff has not responded to the Commissioner's motion. Judgment on the pleadings may be granted under Rule 12 (c) where the material facts are undisputed and where

judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that "the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief," judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This Court finds, after reviewing the entire record, that the Commissioner's decision is supported by substantial evidence in the record. Therefore, the Commissioner's motion for judgment on the pleadings is granted.

II. **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

The ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 21). In her decision, the ALJ adhered to the required 5-step sequential analysis for evaluating Social Security disability benefits cases. (Tr. at 11-21). The 5-step analysis requires the ALJ to consider the following:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities;

(3) if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled;

(4) if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work;

> (5) if the claimant's impairments prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

In this case, the ALJ found that: (1) the Plaintiff has not engaged in substantial gainful activity since August 26, 1991; (2) the Plaintiff has the severe impairments: cervical and lumbar degenerative disc disease and depression; (3) the Plaintiff's impairments do not meet or medically equal the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) the Plaintiff was prevented from doing past relevant work as a floor mechanic; and (5) the Plaintiff has the residual functional capacity to perform sedentary and light work including standing and walking 6 hours in an 8 hour day, sitting 6 hours in an 8 hour day, lifting 20 pounds occasionally and 10 pounds frequently, but the Plaintiff is limited to simple, unskilled and low-stress work which is not at a production pace, which has only occasional contact with co-workers and the public, and which does not require decision-making or the use of judgment. (Tr. at 11-21). Therefore, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 21). This Court holds that the ALJ's decision was supported by substantial evidence in the record.

A.  <u>The ALJ's decision is supported by the medical evidence in the record.</u>

Plaintiff family physician, Dr. Stacy Chance, completed a disability report on October 2, 2003, listing Plaintiff's symptoms as neck pain, low back pain, subjective leg weakness and "stress." (Tr. at 49). Dr. Chance diagnosed the Plaintiff with hypertension, chronic low back pain, tobacco abuse, depression, gastroesophageal reflux disorder ("GERD"), and costochondritis. <u>Id</u>. She stated that the plaintiff could perform work, however his insight and judgment were limited and he would experience pain after prolonged lifting, walking, pushing, and pulling. <u>Id</u>. She also stated that he was limited to occasionally lifting 10 pounds, sitting for 6 hours in an 8 hour work day, and standing or walking for 2 hours in an 8 hour work day.

Dr. Chance's treatment notes also indicate that the Plaintiff experienced chronic neck and lower back pain, had difficulty sleeping, and was receiving treatment for depression. (Tr. at 62-87). Plaintiff's hypertension, GERD, and costochondritis were controlled through medication. (Tr. at 62-87, 468-469). In a disability report completed November 5, 2004, Dr. Chance indicated that the Plaintiff was moderately limited in walking, standing, sitting, lifting, carrying, pushing, pulling, and bending, and that he could lift no more than 25 pounds. (Tr. at 153-4). Dr. Chance indicated that he continued to experience pain, but that his prognosis improved with treatment, including NSAIDS, pain

management, physical therapy as needed, and stengthening and stretching exercises. (Tr. at 155).

Plaintiff saw pain management specialist, Dr. David Moorthi, on April 4, 2003, who diagnosed neck pain, possibly myofacial in nature, and low back pain, possible due to sacroiliac joint dysfunction. (Tr. at 100). Dr. Moorthi prescribed Naprosyn, 500 m.g., Skelaxin, and a TENS unit. Id. Dr. Moorthi recommended discontinuing the use of Soma because of the potential for dependence. (Tr. at 93, 100). Dr. Moorthi later administered epidural steroid injections and prescribed physical therapy and Celebrex, 200 m.g. (Tr. at 92-3, 100).

Consultive physician, Dr. Ramon Medalle saw the Plaintiff on January 13, 2004. (Tr. at 126-130). Plaintiff did not appear in acute distress, his gait was normal, he could walk on heals and toes without difficulty, his squat was full, and he did not need help getting on and off the exam table. (Tr. at 128). Dr. Medalle noted that lumbar flexion was limited to 70%, but lateral flexion and lumbar sacral rotation were normal, and X-rays were also normal. (Tr. at 129). Dr. Medalle opined that the Plaintiff was mildly limited in performing sustained moderate to heavy physical activity and listed his prognosis as stable. (Tr. at 130).

Dr. Nasser Tahir examined the Plaintiff on April 16, 2006. (Tr. at 219). Dr. Tahir reported that an MRI showed a small spur on the neural foramen at C4-C5. (Tr. at 220). Dr. Tahir diagnosed low back pain, neck pain, thoracic pain, and right knee pain.

(Tr. at 221).  He suggested an MRI and a neurological evaluation. Id.  The MRI revealed mild degenerative spine disease but was otherwise normal. (Tr. at 234).

Dr. Allen Pettee, a neurologist, evaluated the Plaintiff on June 5, 2006. (Tr. at 227).  Dr. Pettee stated that the Plaintiff suffered from only modest disc disease and did not need a formal spinal surgery evaluation. (Tr. at 230).  He recommended a formal rheumatology evaluation. Id.

On March 4, 2003, Plaintiff was admitted to Rochester General Hospital ("RGH") for a mental status change.  (Tr. at 102).  The RGH admission note indicates that he had taken Soma and drank half of a bottle of whiskey after an altercation with his brother. Id.  It was noted that he may have downplayed his alcohol use. (Tr. at 104).  He was referred to Rochester Mental Health Center for counseling. (Tr. at 218).

Plaintiff was treated for depression at the Rochester Mental Health Center by therapist Ann Bodyk. (Tr. at 182-208, 210-18, 283-375). On March 20, 2003, Ms. Bodyk initially examined the Plaintiff and reported his mood was full-range with congruent affect, his insight and judgment were fair, and his impulse control and concentration were good. (Tr. at 212).  She noted that Plaintiff had family support, but had difficulty forming relationships outside his family. Id.  She diagnosed Plaintiff with depressive disorder and personality disorder and recommended a treatment plan

that included psychotherapy, a psychiatric evaluation, and medication management. (Tr. at 213, 182).

Ms. Bodyk's subsequent treatment notes indicate that the Plaintiff continued to experience depressive symptoms, but that he had normal thought processes, full range of mood, congruent affect, full orientation, intact memory, and good concentration, insight, and judgment. (Tr. at 184-87, 189, 192-203, 205-7, 299-374). Plaintiff often mentioned his frustration at not being able to obtain SSI benefits. Id.  Dr. Tulio Ortega, a psychiatrist at Rochester Mental Health Center, saw the plaintiff on June 2, 2005 and noted that his main psycho-social stressor was his failure to obtain Social Security benefits. (Tr. at 335).  Dr. Ortega noted that Plaintiff "continues to be one of those patients that probably would never get back to work due to his perception that he is already disabled." Id.

Plaintiff's medication was managed at Rochester Mental Health Center.  He was initially prescribed Lexapro, and later took Prozac, Trazadone, and Busbar. (Tr. at 208, 204-5).  He was then prescribed Gabitril, Effexor and Seroquel, and later Lunesta. (Tr. at 335).  Plaintiff stated that the medication greatly decreased his anxiety and helped with his depression. (Tr. at 474-5).

On January 13, 2004, Plaintiff saw Christine Ransom, Ph.D. for a psychiatric evaluation. (Tr. at 131).  Dr. Ransom noted that Plaintiff was cooperative and socially appropriate, he was

coherent, goal directed, and expressed a full range of affect. (Tr. at 132). Plaintiff's mood was neutral, and his attention and concentration were intact. Id. Plaintiff had average intellect and good judgement and insight. (Tr. at 132-3). Dr. Ransom diagnosed the Plaintiff with major depressive disorder, currently in remission with medication therapy. (Tr. at 133). She suggested that he continue his current treatment and listed his prognosis as good. Id.

In her decision, the ALJ found that the plaintiff could perform at least sedentary work that was simple, low-stress, unskilled, and not at a production pace, that required limited contact with co-workers and the public, and that involved only occasional decision-making and judgment. The ALJ's decision is supported by substantial medical evidence in the record, including the medical evidence provided by his treating physician, Dr. Chance, and his treating therapist, Ms. Bodyk, as well as the consultive physicians.

B.  The ALJ properly concluded that the Plaintiff's testimony was not entirely credible.

The ALJ found that, considering the medical evidence, and the Plaintiff's testimony regarding his daily activities, the Plaintiff's complaints of severe pain and functional limitations were not entirely credible. (Tr. at 18). The ALJ, however, did give the Plaintiff's testimony the benefit of the doubt with regard to his social limitations, and included in her decision the

Page 10

limitation that he could only work in situations which required limited contact with co-workers or the general public.  Id.

Plaintiff testified that he had not worked since 1991 after an auto accident prevented him from returning to work as a floor mechanic. (Tr. at 462-4).  He testified that he currently suffered from degenerated discs and spurs, sleep apnea, arthritis, asthma, high blood pressure, depression, and anxiety.  (Tr. at 464, 467, 469, 474-475).  Plaintiff testified that he had chronic pain from his neck to his tailbone which, with medication, was an 8 on a 1-10 scale. (Tr. at 466-7).  He stated that he could walk for 2-3 minutes, stand for 20 minutes, and sit for 30 minutes before changing positions. (Tr. at 477-8).  He also stated that he could lift approximately 10 pounds, but could not kneel, stoop, or squat, and could not bend without pain.  (Tr. at 478-9).

While he testified that he was still depressed, he stated that medication helped and it reduced the number of anxiety attacks he experienced. (Tr. at 474-5).  He testified that he did not have crying spells, but that he did not want to be around people. (Tr. at 474).

Plaintiff stated that he did not have many friends, but he lives with his brother, regularly visits his mother, and generally gets along well with friends and relatives. (Tr. at 475, 479, 481). His daily activities include doing chores such as mopping, cleaning, dishes, laundry, cooking, and getting groceries. (Tr. at 479-80).  He reads, watches television, and drives himself to

doctors appointments.  (Tr. at 481).  It was also noted by his therapist, that he breeds rabbits as a hobby and had planted a vegetable garden. (Tr. at 338, 326).

The ALJ correctly evaluated Plaintiff's credibility and concluded that his testimony was not entirely credible.  Plaintiff was able to perform a wide range of daily activities, and the medical evidence supports the decision that the Plaintiff is able to perform at least sedentary work.  Based on the medical evidence in the record and the Plaintiff's testimony, this Court finds that there was substantial evidence in the record to conclude that the Plaintiff was not disabled within the meaning of the Social Security Act.

## **CONCLUSION**

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.  Therefore, I grant the Commissioner's motion for judgment on the pleadings.  The Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                           s/Michael A. Telesca
                                         MICHAEL A. TELESCA
                                       United States District Judge

Dated:    Rochester, New York
          February 26, 2009